

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

CARLOS ROMAN AND ESTHER ROMAN

                                           Plaintiffs,

-against-

THE CITY OF NEW YORK, POLICE COMMISSIONER RAYMOND KELLY, POLICE OFFICER MICHAEL INTERDONATI, Shield #7722, POLICE OFFICER RENZO SILVA, Shield # 21635, SERGEANT JOSE ORTIZ, Shield #2871,

                                           Defendants.

------------------------------------------------------------------ x

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

DOCKET #09-CV-7061

ECF CASE

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiffs seek relief for the violation of their rights secured by 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of New York.

2. The claims arise from an August 16, 2006 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things, unlawful entry, trespass, assault, battery, false arrest and malicious prosecution.

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 U.S.C. §1331, 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution. Pendent party jurisdiction and

supplementary jurisdiction over plaintiffs' state law claims are asserted.

5.  The amount in controversy exceeds $75,000.00 excluding interest and costs.

6.  Venue is laid within the United States District Court for the Southern District of New York in that Defendant City of New York is located within the boundaries of the Southern District of New York, and the policy failures that caused the deprivation of plaintiffs' constitutional rights took place within the Southern District of New York.

## PARTIES

7.  Carlos Roman and Esther Roman are citizens of the United States and at all times here relevant resided in Brooklyn, New York.

8.  The City of New York is a municipal corporation organized under the laws of the State of New York.

9.  New York City Police Commissioner Raymond Kelly ("Kelly") was at all times here relevant the Commissioner of the New York City Police Department, and, as such, was a policy maker with respect to training, supervision, and discipline of NYPD officers, including the other individual defendants. Kelly is sued in his individual and official capacities.

10. All others individual defendants ("the officers"), are employees of the NYPD, and are sued in their individual capacities.

11. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL ALLEGATIONS

12. On August 16, 2006, plaintiffs were stopped inside their own building, but outside of their apartment, by the officers.

13. The officers handcuffed plaintiffs and searched their home. After searching the home, the officers ordered Esther Roman to sign a written consent to search the house, threatening her that if she did not sign the consent, they would cause her children to be taken from her. In the search of the home, the officers found one unlit marijuana cigar, and determined they would bring Carlos Roman to the precinct and charge him.

14. One of the officers threatened Esther Roman that if she or Carlos made any moves to contest the legality of the search of their home, they would call the Administration for Childrens' Services ("ACS"), and have plaintiffs' children taken from them.

15. The officers then falsely told officials from the Kings County District Attorney's office ("the DA's office") that they found a gun in plaintiffs' home, knowing that the DA's office would use their statements to prosecute Carlos Roman for possession of a gun. The officers further gave the DA's office a false (and extraordinarily unlikely) story concerning the events in question. They claimed essentially that while on a plainclothes "anti-crime" detail, as they were concluding their tour for the day, they happened to see plaintiff and his wife driving without a seatbelt. They pulled the car over (right in front of plaintiffs' home), and since Carlos Roman had no identification on him, they allowed his wife to go to their apartment to retrieve his driver's license. She took so long to do so, however, that they went to her apartment, where they smelled the strong odor of marijuana. They asked for permission to enter, and were granted consent by Esther Roman, who also gave them consent to search the apartment, where they found a gun and a marijauna cigar. This entire version of events (in paragraph 15) was the officers' version, explaining how anti crime officers at the end of the tour investigating a driver without a seatbelt ended up inside of plaintiffs' apartment, allegedly recovering a gun. The Officers told conflicting stories concerning these events in the Grand Jury, at suppression

3

hearings, and in their initial statements to the DA's office, and at the Civilian Complaint Review Board.

16. The case proceeded to suppression hearings; the day after Police Officer Silva was cross examined at the hearing, workers from the New York State Officer of Children and Family Services (formerly ACS), contacted plaintiffs about an allegation against them (source unidentified) of suspected child abuse or maltreatment, just as the officers had threatened.

17. The suppression hearings in the case against Carlos Roman resulted in no suppression. Carlos Roman had no opportunity to appeal the Court's decision, however, because on June 11, 2008, the case was dismissed on the prosecutor's own motion, after the conclusion of the suppression hearings, because the People did not feel they could prove their case beyond a reasonable doubt.

18. Plaintiffs did not have a gun in their home, and never voluntarily gave police permission or consent to enter or search their home.

19. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff, and agreed, shortly after the incident, not to report each others' illegal actions and to fabricate a story and falsely and maliciously charge Carlos Roman with possession of a gun.

20. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## **DAMAGES**

21. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a. Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure;

    b. Violation of their right to Due Process of Law under the Fourteenth Amendment to the United Stated Constitution;

    c. Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

    d. Violation of their New York State Constitutional right under Article 1, Section 6 to Due Process of Law;

    e. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

    f. Loss of liberty;

    g. Lost wages and attorney's fees;

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

22. The above paragraphs are here incorporated by reference.

23. Defendants acted under color of law and conspired to deprive plaintiffs of their civil, constitutional and statutory rights to be free from unreasonable search and seizure and to due process of law pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution, and are liable to plaintiff under 42 U.S.C. §1983.

24. Defendants falsely arrested plaintiffs, and failed to intervene in each other's obviously illegal actions.

25. Plaintiff has been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL LIABILITY)

26. The above paragraphs are here incorporated by reference.

27. The City and Kelly are liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. Kelly has been personally involved in crafting and maintaining the aforementioned policies and customs.

28. The City and Kelly have been alerted to the regular false arrests by its police officers, but have nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

29. The aforesaid event was not an isolated incident. The City and Kelly have been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City and Kelly have allowed policies and practices that allow the aforementioned to persist.

30. For example, the failures of the Civilian Complaint Review Board ("the CCRB"), a

City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. Such lack of substantiation results from several ongoing practices; one is that the CCRB often explicitly in their findings note that complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB, in effect forcing complainants to choose between bringing a lawsuit or seeking justice through the CCRB. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB further routinely takes a year or more to investigate and close out even simple complaints, resulting in bad police officer remaining on the street while charges are pending. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

31. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which Kelly has done on occasion.

32. The City and Kelly also lack any procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper

search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City and Kelly have isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

33. The City and Kelly are aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City and Kelly have failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiffs' complaints to the CCRB from the first day of the incidents complained of, the City has failed to remedy the wrong.

34. Plaintiffs have been damaged as a result of the deliberate indifference of the City and Kelly to the constitutional rights of the City's inhabitants.

### THIRD CAUSE OF ACTION
(CONSTITUTIONAL TORT)

35. All preceding paragraphs are here incorporated by reference.

36. Defendants, acting under color of law, violated plaintiffs' rights pursuant to §§6 and 12 of the New York State Constitution.

37. A damages remedy here is necessary to effectuate the purposes of §§6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiffs' rights under those sections.

## FOURTH CAUSE OF ACTION
(MALICIOUS PROSECUTION)

38. The preceding paragraphs are here incorporated by reference.

39. Defendants, acting with malice, initiated a prosecution against plaintiffs and caused them to be prosecuted.

40. Defendants had no reasonable chance at prevailing against plaintiffs.

41. The case was terminated favorably to plaintiff when it was dismissed.

42. Defendants have deprived plaintiffs of their civil, constitutional and statutory rights and have conspired to deprive them of such rights and are liable to plaintiffs under 42 USC §1983, New York State common law, and the New York State Constitution.

43. As a result of the malicious prosecution implemented by defendants, plaintiffs were damaged.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiffs in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C. Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED:    Brooklyn, New York
October 14, 2009

TO:  New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY 10007

Police Commissioner Raymond W. Kelly
1 Police Plaza
Room 1406
New York, NY 10006

Police Officer Renzo Silva, Shield #21635
75th Precinct
1000 Sutter Avenue
Brooklyn, NY 11208

Police Officer Michael Interdonati, Shield #7722
75th Precinct
1000 Sutter Avenue
Brooklyn, NY 11208

Sergeant Jose Ortiz, Shield #2871
Brooklyn North Gang Unit
30 Ralph Avenue
Brooklyn, NY 11221

Very truly yours,

*[signature]*

Stoll, Glickman & Bellina, LLP
By: Andrew B. Stoll (AS8808)
Attorney for Plaintiff
71 Nevins Street
Brooklyn, NY 11217
(718) 852-3710
astoll@stollglickman.com